**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-03480-NYW

D.H.,

     Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[1]

     Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, for review of the final decision made by the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by D.H. ("Plaintiff or "D.H.").[2]  After carefully considering the Parties' briefing, the Administrative Record, and the applicable case law, this Court respectfully **AFFIRMS** the Commissioner's decision.[3]

---

[1] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit.  No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only."  D.C.COLO.LAPR 5.2(b).  Accordingly, this Court refers to Plaintiff using his initials only.

[3] This civil action was originally assigned to the undersigned in her capacity as Magistrate Judge for a decision on the merits pursuant to the Parties' consent. *See* [Doc. 11; Doc. 17]; 28 U.S.C.

## BACKGROUND

Plaintiff, born November 23, 1959, filed an application for DIB on February 1, 2019, alleging he became disabled on July 30, 2018. [Doc. 10-3 at 83].[4]  Plaintiff claims he could not work due to the following medical conditions: osteoarthritis, hypertension, and back pain. [*Id.*]. The Social Security Administration (the "SSA") initially denied Plaintiff's claim on July 9, 2019. [*Id.* at 93–94].  Upon reconsideration, the SSA again denied Plaintiff's claim on January 21, 2020. [*Id.* at 107–08].  Plaintiff requested a hearing before an administrative law judge ("ALJ") on January 31, 2020. [Doc. 10-4 at 138–39].  ALJ Shane McGovern presided over the hearing, which was held telephonically on January 27, 2021, *see* [Doc. 10-2 at 16], during which the ALJ heard testimony from Plaintiff and Vocational Expert ("VE") Sara Statz. [*Id.* at 30].

***The ALJ Hearing.***  At the hearing, Plaintiff testified that driving was uncomfortable for him and he could not sit through a 45-minute car ride. [*Id.* at 39].  Plaintiff also testified about his work history, including the positions he has held, job duties, and lifting requirements. [*Id.* at 40–51].  For instance, Plaintiff testified that he was a groundskeeper for an apartment complex, where he delivered notices, walked stairs, and shoveled snow, among other duties. [*Id.* at 41].  Plaintiff stated that he lifted items of varying weight on a daily basis, including "attempt[ing] to do 85-pound trash bags." [*Id.* at 42].  Plaintiff also testified that he worked a similar groundskeeping job where he maintained the outdoor areas of Denver's 16th Street Mall. [*Id.* at 44].  In that position, he would pick up trash with a pan and broom, wipe down trash cans, and drive a truck with a

---

§ 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2.  Following the undersigned's appointment as a United States District Judge, the undersigned retained this action as the presiding judge. *See* [Doc. 18].

[4] When citing to the Administrative Record, the Court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents the Court cites to the document and page number generated by the CM/ECF system.

snowplow.  [*Id*.].  Plaintiff stated that he lifted a maximum of approximately 40 pounds while working in that position.  [*Id*. at 45].  In addition, Plaintiff testified that he worked as a line operator, a position that required him to lift a maximum of 22 pounds.  [*Id.* at 47, 49–50].

With respect to his functional limitations, Plaintiff testified that he experienced breathing issues which impacted his ability to walk, stand, and sit down.  [*Id*. at 52–55].  He stated that his wife is responsible for grocery shopping and other general errands.  [*Id*. at 54].  Regarding mobility, Plaintiff claimed that he could not walk six blocks without resting at least once.  [*Id*. at 52–53].  Additionally, Plaintiff testified that he cannot stand in line or walk around the grocery store due to discomfort.  [*Id*. at 54].  However, he highlighted that he was able to stand and wash his breakfast dishes.  [*Id*.].  Plaintiff estimated the time it took him to wash dishes ranged from approximately 10 minutes to  "half an hour because it was so tiring," and he "couldn't really hold [him]self up."  [*Id*. at 54].  As to sitting, Plaintiff testified that he "just can't get comfortable" and needed to regularly readjust his seating position.  [*Id*. at 55].  Plaintiff further testified that he experienced numbness and tingling in his hands and feet.  [*Id*. at 58].  He noted that he has trouble holding objects and must grip objects, like a cup, tightly to not drop it.  [*Id*.].

Following Plaintiff's testimony, the VE summarized Plaintiff's work history, identifying three of Plaintiff's past relevant positions (discussed above) as (1) etch operator, (2) groundskeeper, and (3) a composite position of groundskeeper and highway maintenance.  [*Id.* at 63].  The VE also answered three hypotheticals from the ALJ regarding types of work individuals similarly situated to Plaintiff could perform.  *See* [*id*. at 63–66].

For the first hypothetical, the ALJ asked the VE to consider a person of Plaintiff's age, education, and past work experience; who can perform light work; cannot climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, kneel, and

crawl; and could not be exposed to moving mechanical parts or unprotected heights.  [*Id.* at 63].

The VE stated that such a person could perform (1) the etch operator position, "both as defined

and as performed" by Plaintiff, and (2) the groundskeeper industrial-commercial position "as

actually performed by [Plaintiff]."  [*Id.* at 64].  For the second hypothetical, the ALJ added the

following limitations to the first hypothetical individual: "occasional exposure to pulmonary

irritants such as fumes, odors, dusts, gases, [and] poorly ventilated areas."  [*Id.*].  In response to

the ALJ's question whether these additional limitations "change[d] anything with [the VE's]

response" to the first hypothetical, the VE stated, "[n]o, a groundskeeper industrial-commercial is

going to be working outside mostly and the etch operator has ample ventilation available."  [*Id.* at

64–65].  For the third hypothetical, the ALJ asked the VE to "keep all the limits" from the first

hypothetical, but reduce the exertional level from light to sedentary.  [*Id.* at 65].  The VE stated

that the limitations imposed on the third hypothetical individual would eliminate all of Plaintiff's

past work.  [*Id.*].  In addition, in considering Plaintiff's advanced age (i.e., over 55), the VE

testified that there were no skills that would transfer from Plaintiff's "past work into something

that would fit within [the] sedentary hypothetical" described above.  [*Id.*].  The VE also testified

that additional limitations of  "occasional handling, fingering, [and] feeling" imposed on the first

hypothetical would preclude Plaintiff from performing any of his past relevant work.  [*Id.* at 65–

66].

   ***The Hearing Decision.***  On March 2, 2021, the ALJ issued a decision denying Plaintiff's

claim.  [*Id.* at 13–24].  The ALJ determined that Plaintiff met the insured status requirements of

the Act through September 30, 2023, and had not engaged in substantial gainful employment since

July 30, 2018.  [*Id.* at 18].  At Step Two, the ALJ found that Plaintiff had the following severe

impairments: chronic pancreatitis, lumbar spine degenerative disc disease, residuals from

4

pulmonary embolism, and cervical spine degenerative disc disease.  [*Id.*].  The ALJ also noted that "the medical evidence also established findings of marijuana use and alcohol dependence," but found "no severe impairment" related to those issues given that Plaintiff's "marijuana and alcohol use has not resulted in residual symptoms" during the relevant period.  [*Id.* at 19].  The ALJ also found that Plaintiff's "medically determinable mental impairment of depression" caused only a minimal limitation in his ability to perform basic mental work activities and therefore, was non-severe.  [*Id.*].  At Step Three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in the Social Security regulations ("Regulations").  [*Id.* at 20].  At Step Four, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work, but with the following limitations: Plaintiff could never "climb ladders, ropes, or scaffolds, and no more than occasional ramps and stairs, balance, stoop, crouch, kneel, and crawl," and he could not be exposed to moving mechanical parts or unprotected heights.  [*Id.*].  Finally, at Step Five, the ALJ found that Plaintiff was "capable of performing past relevant work as an etch operator/semiconductor wafers and groundskeeper."  [*Id.* at 23].

Relevant to the instant appeal, in establishing Plaintiff's RFC at Step Four, the ALJ considered Plaintiff's hearing testimony, medical examination findings and diagnostics, resulting treatment, daily activities, and prior medical opinions and administrative medical findings, including the opinion of consultative examiner Joseph Sever, M.D. ("Dr. Sever").  [*Id.* at 20– 22].  The record reflects that Plaintiff, at the Agency's request, visited Dr. Sever for an orthopedic consultation on May 29, 2019.  [Doc. 10-7 at 520–28].  Dr. Sever noted, *inter alia*, that Plaintiff could "perform all ADLs" and was able to "bathe, shower, dress, and ambulate with no assistance devices."  [Doc. 10-7 at 521].  With respect to Plaintiff's station and gait, Dr. Sever observed that

Plaintiff sat "erect on the exam room table with no evidence of tilt or list," he "transfer[red] from sitting to standing using the table for some support, but with no apparent difficulty," his "gait [was] somewhat short-based, but otherwise normal with no appreciable limp," and he was "able to walk on his heels and perform tandem gait and ambulate[d] with no assistance devices."  [*Id.* at 523]. Dr. Sever also observed that Plaintiff's cervical spine had "some straightening" but "no muscle spasm detected," and Plaintiff had a "normal thoracic and lumbar curvature with no evidence of scoliosis and [Plaintiff] denie[d] any tenderness to palpation or percussion over the midline or paravertebral area."  [*Id.*].  Additionally, Plaintiff's "muscle tone appear[ed] to be normal."  [*Id.*].

Dr. Sever found that Plaintiff had full range of motion in his hips and knees bilaterally; normal range of motion in his ankles; and there was "no ligamentous instability" in his knees.  [*Id.* at 524–25].   Regarding Plaintiff's feet, Dr. Sever found "moderate pes planus deformity bilaterally" and a "[f]airly large bunion on the right foot, which [was] reportedly tender to touch[,] and a plantar wart over the base of the second toes, left foot, which [was] reportedly tender," although there was "no inflammation around the area."  [*Id.* at 525].  Dr. Sever also noted that Plaintiff had previous x-rays of his lumbar spine and left knee, which showed normal findings. *See* [*id.*].  Dr. Sever's diagnostic impression of Plaintiff included the following:

1.  Eighteen-month history of low back pain with gradual improvement and diminishment in his back pain over the last 4 or 5 months, however with continued low back pain with evidence of L4 nerve root irritation, left and L5 nerve root irritation, right.
2.  Chronic low neck and upper thoracic area pain with x-ray findings of moderate degenerative arthritis in the C5, C6, and C7 area of the back of the neck and evidence of nerve root irritation at the C6 level bilaterally.
3.  Mild pain in the left shoulder, probably secondary to mild degenerative joint disease, but with only minimal loss of range of motion.
4.  Intermittent popping, left knee, but with no loss of range of motion or function, probably secondary to degenerative joint disease.
5.  Essential hypertension, currently controlled on medication.
6.  Past history of pulmonary embolus, currently on anticoagulation therapy.

[*Id.* at 525–26].   Notably, Dr. Sever concluded his report by providing the following statement

regarding Plaintiff's RFC:

> Based on the examination today, claimant can currently *stand and walk for 2 to 4 hours in an eight-hour day*, currently being limited to standing no more than 30 minutes continually and walking is limited to no more than 2 to 3 blocks continually.  Due to his continuing back pain, the claimant can lift 20 pounds occasionally and 10 pounds frequently, but should not ambulate and carry more than a total weight of 20 pounds. Kneeling, squatting, bending, and crawling should be limited to occasional. The claimant has no loss of fine manipulative skills in his upper extremities.

[*Id.* at 526 (emphasis added)].

In the hearing decision, the ALJ found Dr. Sever's opinion to be "somewhat persuasive."

[Doc. 10-2 at 22].   Specifically, the ALJ determined that Dr. Sever's opinion regarding Plaintiff's

ability to perform work at a "light exertional level [with] occasional postural activities" was

consistent with and supported by some treatment records and Plaintiff's "own reported abilities

and activities."  [*Id.*].   On the other hand, the ALJ did not find persuasive Dr. Sever's opinion that

Plaintiff could "stand/walk for 2 to 4 hours in an 8 hour day with standing of no more than 30

minutes continually."  [*Id.*].   The ALJ explained that this opinion was "not supported by the

evidence of record as a whole . . . which reflected that the claimant could ambulate independently

and without the need for assistive devices and perform all activities of daily living."  [*Id.*].

Plaintiff filed a Request for Review of the Hearing Decision on July 7, 2020, which the

Appeals Council denied on April 21, 2021.   [*Id.* at 1–6].   Plaintiff sought judicial review of the

Commissioner's final decision in the United States District Court for the District of Colorado on

December 29, 2021, invoking this Court's jurisdiction to review the Commissioner's final decision

under 42 U.S.C. §405(g) in this action.  *See* [Doc. 1].   Because this matter is ripe for consideration,

the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if they are insured, have not attained retirement age, have filed an application for DIB, and have a disability as defined in the Act. 42 U.S.C. § 423(a)(1). The claimant must prove they were disabled prior to last date insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). Under the Act, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). The disability must last or be expected to last for at least 12 months. *Id.* § 423(d)(1)(A). When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. *Id.* at § 423(d)(2)(B).

Under the Act, there is a five-step evaluation process to determine whether a claimant is disabled:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" and the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). If an ALJ determines "at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's decision, the Court limits its review to considering whether the ALJ's findings are supported by substantial evidence and if they applied the correct legal standards. *Flaherty*, 515 F.3d at 1069. The Court may not reweigh evidence nor substitute judgment for the Commissioner's, but failure to apply proper legal standards may be sufficient grounds for reversal independent of substantial evidence analysis. *Hendron v. Colvin*, 767 F.3d 951 (10th Cir. 2014). Substantial evidence is more than a "mere scintilla" and is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. *Flaherty*, 515 F.3d at 1069. Evidence is not substantial if it is overwhelmed by the record or is only a conclusion. *Williams*, 844 F.2d at 750. The Court may not replace the Commissioner's decision between two plausible and conflicting views, even if the Court would find differently in a *de novo* review. *Lax*, 489 F.3d at 1084. However, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

**ANALYSIS**

Plaintiff identifies two overall issues in the ALJ's decision that he argues warrant remand. *See* [Doc. 14 at 2]. First, Plaintiff challenges the ALJ's findings at Step Four, arguing that the ALJ's erred in his evaluation of Plaintiff's RFC when he found that Plaintiff can stand/walk for up to six hours in an eight-hour workday. *See* [*id*. at 3–15]. Second, Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility, including that the ALJ failed to consider Plaintiff's work history before his period of disability began. [*Id*. at 15–16]. In the Response, the Commissioner disagrees with Plaintiff, insisting that substantial evidence supports the ALJ's decision, and the ALJ properly considered all such evidence. *See* [Doc. 15 at 1]. As explained in greater detail below, the Court finds that the ALJ's determination was supported by substantial evidence. The Court will address Plaintiff's arguments in turn.

**I.      Plaintiff's First Challenge: Whether the ALJ Erred at Step Four in His Evaluation of Plaintiff's RFC When He Found that Plaintiff Can Stand or Walk Up to Six Hours in a Workday.**

For his first challenge, Plaintiff argues that the ALJ erred in his RFC assessment by finding that Plaintiff can stand or walk for six hours in an eight-hour workday. [Doc. 14 at 3–14]. Plaintiff contends that this finding is not supported by the record and, specifically, is contrary to the opinion of Dr. Sever, who determined that Plaintiff could stand or walk only two to four hours in a workday. [*Id.*].

***Legal Standard.***  In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). "The RFC assessment must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hendron*, 767 F.3d at 954 (citation and quotation marks omitted). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the Court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ must address the record's medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015). For applications filed after March 27, 2017, the Regulations provide that an ALJ must evaluate the persuasiveness of a medical opinion using the following factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors "tending to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *Pearson v. Saul*, No. 20-cv-01808-NRN, 2021 WL 2549214, at *3 (D. Colo. June 22, 2021). The Regulations provide that supportability and consistency "are the most important factors" in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2).

While the ALJ must explain his approach to these two factors, he need not expound on the remaining three factors unless he finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *Id.* at § 404.1520c(b)(2)–(3); *see Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "[A] supportability inquiry examines how well a medical source supported and explained their opinion." *S.P. v.*

*Kijakazi*, No. 20-cv-00717-CMA, 2021 WL 6197283, at *5 (D. Colo. Dec. 30, 2021) (citing *Vellone*, 2021 WL 319354, at *6). "Consistency, on the other hand, is 'an all-encompassing inquiry' that focuses on how well a medical source opinion is supported, or not supported, by the entire record." *Id.* (citation omitted); *see also* 20 C.F.R. § 404.1520c(c)(2). At bottom, the ALJ must "consider all evidence in [the] case record when [making] a determination or decision whether [the claimant] is disabled." 20 C.F.R. § 404.1520(a)(3). This means that in addition to discussing supporting evidence, the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mestas v. Kijakazi*, No. 20-cv-01865-REB, 2021 WL 3030224, at *3 (D. Colo. July 19, 2021) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

*The ALJ's RFC Finding and Rationale.* As mentioned above, the ALJ concluded that Plaintiff retains the RFC to perform light work, except that Plaintiff may "never climb ladders, ropes, or scaffolds"; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, kneel, and crawl; and never be exposed to moving mechanical parts or unprotected heights. [Doc 10-2 at 20]. In establishing Plaintiff's RFC, the ALJ identified four factors that supported his conclusion. [*Id.* at 21–22].

The first two factors the ALJ considered were (1) Plaintiff's examination findings and diagnostics, "which [did] not show findings consistent with that of a totally disabled individual," and (2) Plaintiff's treatment, which "resulted in improvement in [Plaintiff's] impairments, despite being generally conservative in nature." [*Id.* at 21]. For instance, the ALJ highlighted that treatment records from November 2018—i.e., approximately four months after Plaintiff's alleged period of disability began—showed that Plaintiff did not appear to be in acute distress, and that he "ambulated independently, and denied any pain or discomfort." [*Id.*]; *see also* [Doc. 10-7 at 355].

The ALJ also pointed out that records from Plaintiff's May 2019 consultation with Dr. Sever showed, *inter alia*, that Plaintiff "sat erect on the exam room table and was able to transfer from sitting to standing using the table with support, but with no apparent difficulty." [Doc. 10-2 at 21]; *see also* [Doc. 10-7 at 523]. In addition, Plaintiff's gait, although "noted to be short-based, . . . was otherwise normal with no appreciable limp." [Doc. 10-2 at 21]; *see also* [Doc. 10-7 at 523]. The ALJ also pointed to records from September 2019, which noted that Plaintiff was well-developed, nourished, and in no acute distress. [Doc. 10-2 at 21]; *see also* [Doc. 10-7 at 640].

The third factor the ALJ considered was Plaintiff's daily activities. [Doc. 10-2 at 21]. The ALJ noted that at Plaintiff's May 2019 consultation with Dr. Sever, Plaintiff reported that he "was able to perform all activities of daily living" and that he was "able to bathe, shower, dress, and ambulate with no assistive devices." [*Id*.]; *see also* [Doc. 10-7 at 521]. The fourth factor the ALJ considered was the medical opinions and prior administrative medical findings. [Doc. 10-2 at 22]. Under this factor, the ALJ cited Dr. Sever's findings, including his opinion that Plaintiff could stand/walk for two to four hours in an eight-hour day. [*Id*.]. As noted above, although the ALJ found Dr. Sever's opinion regarding Plaintiff's ability to perform light exertional work with "occasional postural activities" was consistent with the record, he did not find persuasive Dr. Sever's opinion that Plaintiff could "stand/walk for 2 to 4 hours in an 8 hour day with standing of no more than 30 minutes continually." [*Id*.].

In finding the standing/walking portion of Dr. Sever's opinion unpersuasive, the ALJ cited the opinions of State Agency medical consultants, who stated that Plaintiff could

> lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 6 hours, sit 6 hours, occasionally climb, but never climb ladders, ropes or scaffolds, frequently balance, occasionally stoop, frequently kneel, occasionally crouch and crawl, and should avoid moderate exposure to hazards.

[*Id.*]; *see also* [Doc. 10-3 at 89–92, 104–07; Doc. 10-7 at 530–31, 587–88].  The ALJ found these opinions persuasive on the basis that they were "consistent with and supported by treatment records as whole in this case," reasoning that they better reflected Plaintiff's "examination history and evidence overall" to show that he was "generally high functioning and independent in his activities of daily living."  [*Id.* at 23].  The ALJ concluded his RFC analysis by noting that he *reduced* Plaintiff's RFC "to accommodate limitations resulting from [his] conditions," but found that Plaintiff's "allegations that he is incapable of all work activity due to the alleged limitations" were inconsistent with the "totality of the evidence of record."  [*Id.*].

  ***Plaintiff's Challenges on Appeal.***  On appeal, Plaintiff argues that "the ALJ's analysis of the medical opinion evidence, and in particular his reasons for rejecting [Dr. Sever's] opinion, are neither reasonable nor logical, resulting in an RFC (and a subsequent step 4 finding) that is not supported by substantial evidence."  [Doc. 14 at 5]; *see also* [*id.* at 8–15].  Specifically, Plaintiff claims that the ALJ's conclusion that Plaintiff can stand/walk six hours per workday is "inconsistent with the record," including Dr. Sever's opinion describing greater standing and walking limitations.  [*Id.* at 11]; *see also* [*id.* at 10 (stating that the "narrow question" here is "whether the ALJ's explanation for finding *this one portion* of the opinion 'unpersuasive' was reasonable and logical")].  For support, Plaintiff contends that Dr. Sever's opinion is supported by his own examination which "found decreased sensation in the lower extremities, evidence of L4 and L5 nerve root irritation in the lumbar spine, short gait, bunion, and wart pain, and cervical spine showed straightening with midline tenderness from C5 through T2 and bilateral paravertebral muscle tenderness in the same area."  [*Id.* at 11].  Plaintiff insists that Dr. Sever's examination findings are "consistent with the [greater] standing and walking limitations he

assessed" for Plaintiff, and the ALJ failed to explain how these "abnormal findings diverge from" those limitations.  [*Id.* at 11].

Plaintiff also argues that the ALJ only referenced two specific facts to "discredit" Dr. Sever's opinion: (1) "that Plaintiff can ambulate independently without an assistive device" and (2) "he performs all activities of daily living."  [*Id.*].  Plaintiff states that neither of these factors supports the ALJ's finding that Plaintiff can stand or walk up to six hours per day, and "it is difficult to discern" the ALJ's rationale for relying upon these considerations because Dr. Sever already knew this information "when he reached his opinion."  [*Id.* at 11–12].  Plaintiff maintains that "the ALJ did not explain his reasoning . . . or 'build a logical bridge' from this fact to his findings."  [*Id.* at 12].  And Plaintiff similarly contends that Dr. Sever's opinion is consistent with "objective findings in the record"—specifically, (1) findings from an August 2019 MRI of Plaintiff's "cervical spine due to left neck pain with radiation down the left arm" which revealed spinal stenosis, [*id.* at 10 (citing [Doc. 10-7 at 539, 542])]; and (2) that "Plaintiff has repeatedly been assessed with a history of chronic lower back pain," [*id.* (citing [Doc. 10-7 at 341, 347, 352, 369, 396, 413])].  In addition, Plaintiff insists that his statements regarding his daily living activities are consistent with Dr. Sever's standing and walking limitations, and the ALJ failed to identify any "specific activities" that conflicted with those limitations, nor did he "point to any activities Plaintiff performs that support his finding that Plaintiff can stand and walk for 6 hours a day."  [*Id.* at 12].

Furthermore, Plaintiff challenges the ALJ's reliance upon the opinions of the State Agency Medical consultants, who found, *inter alia*, that Plaintiff could stand and walk up to six hours in a workday.  [Doc. 14 at 13].  In particular, Plaintiff does not contest the content or substance of those prior administrative findings, *see* [Doc. 10-2 at 22]; rather, he argues that the ALJ's rationale for

finding those opinions persuasive is "couched in nonspecific terms of consistency with the record as a whole and Plaintiff's purportedly high functioning independent activities of daily living." [Doc. 14 at 13 (citing [Doc. 10-2 at 23])]. Plaintiff maintains that the ALJ failed to explain "why their findings that Plaintiff can stand/walk for 6 hours a day with no restriction is credited over Dr. Sever's contrary opinion." [*Id.* (emphasis omitted)]. Plaintiff ultimately contends that "[t]he error requiring remand is the ALJ's . . . finding that Dr. Sever's opinion on Plaintiff's standing/walking limitations is unpersuasive, which would have triggered" a further analysis of the remaining three factors under 20 C.F.R. § 404.1520c(c)(3)–(5). [*Id.* at 14].

The Commissioner responds that the ALJ's evaluation of Dr. Sever's opinion was supported by substantial evidence, and that the standing and walking limitations assessed by Dr. Sever, on the other hand, lacked any support in the record. [Doc. 15 at 5–8]. In particular, Defendant references Plaintiff's reliance upon "[v]arious diagnostic imaging findings, decreased sensation, and a bunion," among other findings, that Dr. Sever noted during his examination of Plaintiff. [*Id.* at 7 (citing [Doc. 14 at 11])]. Defendant argues that these findings "do not establish that Plaintiff was limited in how long he could stand/walk in a day or at one time" because (1) "[t]here is no obvious linkage, between a bunion on one foot and a wart on the other foot, and Dr. Sever's belief that Plaintiff would have trouble standing more than 30 minutes at a time," and (2) "Dr. Sever did not provide an explanation to make that connection." [*Id.*]. Defendant also emphasizes that Plaintiff fails to address the ALJ's determination that Dr. Sever's opinion lacked consistency with the record, including that Plaintiff "does not even attempt to identify evidence *consistent with* Dr. Sever's opinion." [*Id.* (emphasis added)]. Defendant further asserts that despite Plaintiff's claim that the ALJ did not properly consider his daily activities, "Plaintiff told

Dr. Sever that he could do all his daily activities, an admission that the ALJ specifically referenced" in his decision.  [*Id.* at 8]; *see also* [Doc. 10-7 at 521 ("He is able to perform all ADLs.")].

*Application.*  The Court finds that the ALJ correctly applied the Regulations set forth in 20 C.F.R. § 404.1520c in determining the persuasiveness of Dr. Sever's medical opinion regarding Plaintiff's standing and walking limitations.  As noted above, Dr. Sever is the only physician who determined that Plaintiff was limited to standing and walking for two to four hours in a workday. [Doc. 10-7 at 526].  In finding that portion of Dr. Sever's opinion unpersuasive, the ALJ explained that he could not identify any supporting evidence for those limitations in the record as a whole, "which reflected that [Plaintiff] could ambulate independently and without the need for assistive devices and perform all activities of daily living."  [Doc. 10-2 at 22].  Further, the ALJ noted that Dr. Sever's opinion regarding Plaintiff's standing and walking limitations were inconsistent with the opinions of two State Agency medical consultants, who determined that Plaintiff could stand or walk up to six hours in a workday. [*Id.*]; *see also* [Doc. 10-3 at 89–92, 104–07].  Notably, the State Agency consultants' underlying opinions stated that they reviewed Dr. Sever's opinion but determined that Plaintiff "should be capable of standing/walking more than 2–4 hours given his normal strength, normal gait without the use of an [assistive device], and normal XR of his left knee and lumbar spine."  [Doc. 10-3 at 89, 104]; *see also* [*id.* at 92, 107 ("The CE examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations.")].  And Plaintiff does not challenge the ALJ's reliance on the medical records showing that Plaintiff exhibited normal strength and normal gait without the use of an assistive device, or that the results of his prior x-rays were normal.  *See, e.g.*, [Doc. 14 at 14 ("The error requiring remand is the ALJ's . . . finding that Dr. Sever's opinion on Plaintiff's standing/walking limitations is unpersuasive.

. . . Plaintiff reiterates that the ALJ's only path to a denial here was to discredit the standing/walking limitations offered by Dr. Sever.").

In addition, as noted above, Plaintiff insists that the findings from Dr. Sever's examination—namely, "decreased sensation in the lower extremities, evidence of L4 and L5 nerve root irritation in the lumbar spine, short gait, bunion, and wart pain, and cervical spine . . . straightening with midline tenderness from C5 through T2 and bilateral paravertebral muscle tenderness"—are "consistent with the standing and walking limitations he assessed." [Doc. 14 at 11]. However, without subscribing to Plaintiff's characterization of Dr. Sever's exam findings,[5] this argument suffers from one obvious flaw: Plaintiff fails to cite any objective medical evidence showing that any of the above findings are *consistent with* maximum standing and walking limitations of two to four hours per workday. *See* [*id.*]. Indeed, Dr. Sever's opinion does not state this conclusion either. *See* [Doc. 10-7 at 520–26]. Nor does Dr. Sever expressly link any particular findings in his diagnostic impression of Plaintiff, *see* [*id.* at 525–26], with the two-to-four-hour standing limitation he later assessed. *See* [*id.* at 526]; *see also* [Doc. 15 at 7 (Defendant asserting

---

[5] For instance, although Plaintiff notes Dr. Sever's observation of a "short gait" in support of his argument that Dr. Sever's standing and walking limitations were consistent with his exam findings, [Doc. 14 at 11], Dr. Sever noted that Plaintiff's "[g]ait was *somewhat* short-based, *but otherwise normal with no appreciable limp*." [Doc. 10-7 at 523 (emphasis added)]. Plaintiff also claims that Dr. Sever observed "evidence of L4 and L5 nerve root irritation in the lumbar spine." [Doc. 14 at 11]. However, the records reflect that although Plaintiff "report[ed] decreased sensation over the left L4 distribution and right L5 distribution in the lower extremities," [Doc. 10-7 at 525], Dr. Sever also examined the results of prior x-rays performed on Plaintiff's lumbar spine and knee, which showed "[n]o degenerative changes" in Plaintiff's lumbar spine, and "[n]o degenerative joint disease" in his left knee," [*id.*]. Similarly, although Plaintiff reported "some tenderness over the left lumbosacral area," Dr. Sever's examination revealed that "[t]here [was] a normal . . . lumbar curvature with no evidence of scoliosis." [*Id.* at 523]. Notably, and as previously mentioned, in disagreeing with Dr. Sever's assessment of Plaintiff's standing and walking limitations, the State Agency medical consultants relied in part on the "normal [x-ray] of his left knee and lumbar spine" in finding that Plaintiff "should be capable of standing/walking more than 2–4 hours" in a workday. [Doc. 10-3 at 89, 104].

that "[v]arious diagnostic imaging findings, decreased sensation, and a bunion—among other findings—do not establish that Plaintiff was limited in how long he could stand/walk in a day or at one time" and "Dr. Sever did not provide an explanation to make that connection")].[6]

Plaintiff also claims that the ALJ's reliance upon Plaintiff's daily living activities to "discredit[] Dr. Sever's opinion is similarly flawed." [Doc. 14 at 12]. Specifically, Plaintiff insists that his statements regarding his daily living activities are consistent with standing and walking limitations of two to four hours, and the ALJ failed to identify any "specific activities" that conflicted with those limitations, nor did he "point to any activities Plaintiff performs that support his finding that Plaintiff can stand and walk for 6 hours a day." [*Id.* at 12]. The Court finds this argument unpersuasive for two reasons.

First, the ALJ considered Plaintiff's testimony regarding his daily living activities, including Plaintiff's allegation that "he could not sustain work due to symptoms arising from his medical impairments," [Doc. 10-2 at 20–21], found that Plaintiff's subjective statements were not substantiated by objective medical evidence, and then detailed the reasons why. *See* [*id.* at 20–23 ("[T]he undersigned did not find the claimant's allegations that he is incapable of all work activity due to the alleged limitations to be consistent with the totality of the evidence of record in light of the reasons outlined herein.")]. Second, it is Plaintiff who bears the burden of proof at Step Four, *see Neilson*, 992 F.2d at 1120, but his argument attempts to improperly shift that burden to the Commissioner. To be sure, by arguing that the ALJ failed to identify (1) Plaintiff's daily living

---

[6] Similarly, Plaintiff provides no basis for his assertion that Dr. Sever's standing and walking limitations are consistent with (1) findings from an August 2019 MRI of Plaintiff's "cervical spine due to left neck pain with radiation down the left arm" which revealed spinal stenosis; and (2) Plaintiff's "history of chronic lower back pain." [Doc. 14 at 10]. Again, apart from Plaintiff's own conclusions on this issue, he fails to cite any medical record supporting that the findings from his 2019 MRI, plus his history of lower back pain, equals an inability to stand or walk for only two to four hours in a workday.

activities that "*conflict*" with Dr. Sever's assessment that Plaintiff could stand and walk for two to four hours in a workday, and (2) "activities Plaintiff performs that *support* [the ALJ's] finding that Plaintiff can stand and walk for 6 hours a day," [Doc. 14 at 12 (emphasis added)], the crux of Plaintiff's argument becomes clear—namely, that the ALJ should have relied exclusively upon Dr. Sever's assessment of Plaintiff's standing and walking limitations. *See, e.g.*, [*id.* at 14 ("In conclusion, Plaintiff reiterates that the only path to a denial here was to discredit the standing/walking limitations offered by Dr. Sever."); Doc. 16 at 3 (arguing that granting Plaintiff's requested relief "does not require this Court to alter any factual finding of the ALJ, but only to hold that the ALJ did not offer a reasonable explanation for his finding that Dr. Sever's opinion of Plaintiff's standing/walking limitations were unpersuasive and that the ALJ relied improperly on a mischaracterization of Plaintiff's daily activities to do so")].  As discussed above, however, Dr. Sever failed to explain his basis for assessing those limitations, and the ALJ thus looked to the record to determine whether any evidence substantiated Dr. Sever's assessment, concluding they did not.  *See* [Doc. 10-2 at 23 (finding persuasive the opinions of the State Agency Medical consultants as "consistent with and supported by treatment records as a whole in this case and which reflect the claimant's examination history and evidence overall to reflect the claimant was generally high functioning and independent in his activities of daily living")]; *see also* [Doc. 10-3 at 92, 107 ("The CE examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations.")]; *cf. S.P.*, 2021 WL 6197283, at *5 (concluding that the ALJ did not err in finding a portion of a medical opinion unpersuasive where the provider's opinions "were more restrictive than [the] [p]laintiff's self-assessment, insufficiently supported by objective medical records, and inconsistent with ongoing examination records that [the] [p]laintiff had normal strength, gait, and range of motion").

Moreover, as previously mentioned, Plaintiff ultimately contends that "[t]he error requiring remand is the ALJ's . . . finding that Dr. Sever's opinion on Plaintiff's standing/walking limitations is unpersuasive, which would have triggered" a further analysis of the remaining three factors under 20 C.F.R. § 404.1520c(c)(3)–(5) "to 'break the tie' between his opinion and the nonexamining State Agency medical consultants' findings." [Doc. 14 at 14]. However, there is no dispute that under the Regulations, supportability and consistency "are the most important factors" the ALJ considers when determining the persuasiveness of a medical opinion or prior administrative findings. 20 C.F.R. § 404.1520c(b)(2). As explained above, the ALJ determined that Dr. Sever's opinion regarding Plaintiff's standing and walking limitations lacked any support in "the evidence of record as a whole in this case." [Doc. 10-2 at 22]. Indeed, Dr. Sever did not explain how he reached the conclusion that Plaintiff was limited to standing and walking for two to four hours in a workday. *See* [Doc. 10-7 at 520–26]. And the State Agency medical consultants determined that Dr. Sever overestimated the severity of Plaintiff's limitations given Plaintiff's "normal strength, normal gait with the use of an [assistance device], and normal XR of his left knee and lumbar spine." [Doc. 10-3 at 89, 92, 104, 107].

In sum, the Court finds that the ALJ applied the correct framework under the new regulations in determining that Dr. Sever's opinion was only somewhat persuasive, and substantial evidence in the record supports the ALJ's determination. The ALJ appropriately noted that Dr. Sever's opinion on this issue was more restrictive than the standing and walking limitations assessed by the State Agency medical consultants, insufficiently supported by the objective medical records, and inconsistent with records showing that Plaintiff could "ambulate independently and without the need for assistive devices and perform all activities of daily living." [Doc. 10-2 at 22]. Under these circumstances, the Court respectfully disagrees with Plaintiff's

assertion that the ALJ's analysis of Plaintiff's disability claim lacks a "logical bridge" between the record discussion and the RFC assessment.  [Doc. 14 at 5, 12–13; Doc. 16 at 1–3]; *see also Scott v. Kijakazi*, No. 21-cv-03376-MEH, 2022 WL 17081331, at *8 (D. Colo. Nov. 18, 2022) (finding that "the basic thrust of the ALJ's reasoning was apparent enough to permit judicial review" and "disagree[ing] that the ALJ's analysis of [the claimant's] disability claim lack[ed] a logical bridge between the record discussion and the RFC assessment").

Upon finding that Dr. Sever's opinion was not supportable or consistent with the evidence in the record, and explaining his rationale, the ALJ was not required to consider any of the remaining factors under the Regulations.  *See Pearson*, 2021 WL 2549214, at *3 ("The ALJ must explain his approach with respect to these factors when considering a medical opinion, but he is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical.").  "It is the ALJ's prerogative to weigh the medical evidence before him."  *S.P.*, 2021 WL 6197283, at *5.  Because the ALJ's decision is supported by more than a scintilla of evidence, the Court will not disturb his findings.  *See Guillar v. Comm'r*, 845 F. App'x 715, 719 (10th Cir. 2021).

## II.   Whether the ALJ Properly Considered Plaintiff's Work History

For his second issue on appeal, Plaintiff challenges the ALJ's credibility assessment.  *See* [Doc. 14 at 15].  When analyzing a claimant's evidence of pain and symptoms, courts must consider (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling. *Wilson v. Astrue*, 602 F.3d 1136

(10th Cir. 2010).  In determining whether a claimant's subjective complaints of pain are credible, the Regulations provide that an ALJ may consider the following factors:

(i)    daily activities;

(ii)   the location, duration, frequency, and intensity of pain or other symptoms;

(iii)  precipitating and aggravating factors;

(iv)   the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

(v)    treatment, other than medication, received for relief of pain or other symptoms;

(vi)   any measures used to relieve pain or other symptoms; and

(vii)  other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).  Moreover, this Court is guided by the principle that "[c]redibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation and citation omitted).  In addition, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted).  "Inconsistencies are a reasonable basis upon which to find a claimant not credible." *Marchand v. Colvin*, No. 14-cv-02533-RM, 2016 WL 1089740, at *8 (D. Colo. Mar. 21, 2016) (citing *Wilson*, 602 F.3d at 1146).  Under Tenth Circuit precedent, "[t]he only question this court must answer is whether the ALJ's [credibility] determination . . . [was] closely and affirmatively linked to evidence that a reasonable mind might accept as adequate to support that conclusion." *Stokes v. Astrue*, 274 F. App'x 675, 686 (10th Cir. 2008) (declining to adopt a bright-line rule that an ALJ must consider a good work history in the credibility determination).

Plaintiff argues that "the ALJ's credibility assessment is generally defective" due to the errors Plaintiff believes the ALJ committed in making his RFC determination, and "specifically [defective] because of his failure to consider Plaintiff's strong work history in his assessment." [Doc. 14 at 15].  With respect to the latter point, Plaintiff asserts that the ALJ should have considered "his strong work history, demonstrating 39 ¼ years of covered earnings (157 quarters since 1978) before alleging disability, even if not always involving a large amount of wages." [Doc. 14 at 15].  According to Plaintiff, this fact "should have informed the ALJ's credibility finding," but the ALJ failed to consider it at all.  [*Id.*].  For support, Plaintiff claims that "20 C.F.R. § 404.1529(c)(3) and SSR 16-3p *require*[] that a claimant's demonstrated willingness to work be considered as part of a credibility assessment."  [*Id.* (emphasis added)].[7]

In Response, Defendant counters that the ALJ properly considered Plaintiff's "subjective descriptions of his symptoms and concluded that his statements concerning the intensity, persistence, and limiting effect of those symptoms were not entirely consistent with the evidence." [Doc. 15 at 8].  Defendant also argues that Plaintiff fails to establish that the ALJ did not consider his work history.  [*Id.* at 9].  In addition, Defendant contends that Plaintiff's reliance upon 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p are misplaced.  [*Id.* at 8–9].  Specifically, Defendant states that "credibility" does not appear in SSR 16-3p, "and the 'subjective symptom evaluation is not an examination of an individual's character.'"  [*Id.* at 9 (citation omitted)].  Moreover, Defendant argues that the Regulation cited by Plaintiff "says nothing about considering 'a demonstrated willingness to work' (or any similar concept)," and "a claimant's work history is never mentioned"

---

[7] Plaintiff clarifies that he "is not suggesting that his strong work history *necessarily* entitles him to enhanced credibility, or that this factor trumps others."  [Doc. 14 at 16].  Rather Plaintiff is arguing that "(1) the ALJ needed to consider this highly relevant credibility factor, and (2) he did not."  [*Id.*].

in the list of factors an ALJ should consider when "evaluating a claimant's subjective complaints." [*Id.* at 10]. For the reasons explained below, the Court respectfully disagrees with Plaintiff.

First, Plaintiff's argument that 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p required the ALJ to consider his willingness to work lacks basis. Nowhere in § 404.1529(c)(3) or SSR 16-3p does the language "demonstrated willingness to work" appear. Rather, § 404.1529(c)(3) notes that the Defendant will consider "all of the evidence presented, including information about your prior work record." And although Plaintiff testified that "I love to work" during the hearing, [Doc. 10-2 at 40], this is not dispositive evidence that the ALJ should have given weight to this statement in assessing Plaintiff's credibility. *See, e.g.*, *Bell v. Colvin*, 645 F. App'x 608, 613 (10th Cir. 2016) (where the Plaintiff contended that the ALJ failed to consider various factors—including "difficulties she faced from a young age, her doctor's belief that her symptoms were real, her good work history, and her efforts to obtain relief by traveling to the Mayo Clinic"—finding that "[t]he ALJ is not required to discuss every piece of evidence").

Second, the ALJ was not required to consider Plaintiff's "strong work history" as Plaintiff claims. [Doc. 14 at 15]. For instance, Plaintiff cites *Tyson v. Apfel*, 107 F. Supp. 2d 1267 (D. Colo. 2000), for the proposition that "[w]here a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work." [Doc. 14 at 15]. However, that case is distinguishable. There, the court considered an ALJ's finding that a claimant's attempts to work after surgery demonstrated that she could work despite her pain. *Tyson*, 107 F. Supp. 2d at 1270. However, the court determined that the claimant's "persistent attempts to work with . . . impairments serve[d] to bolster her credibility," noted that she stopped working "reluctantly on the advice of her doctor," and concluded that the ALJ's adverse credibility finding was "inconsequential" because "[t]he ALJ selected insignificant factors to discount [the

claimant's] credibility."  *Id.* at 1270–71.  Here, the ALJ did not select insignificant factors in finding Plaintiff's statements regarding his limitations inconsistent with the record, and there is no indication that Plaintiff stopped working on the advice of a doctor.  Under these circumstances, the Court sees "no error in the ALJ's failure to discuss [Plaintiff's] work history."  *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 796 (10th Cir. 2013); *see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (requiring an ALJ only to "set[ ] forth the specific evidence he relies on in evaluating the claimant's credibility" rather than conduct a "formalistic factor-by-factor recitation of the evidence").

Accordingly, the Court finds that the ALJ properly considered the appropriate factors in his determination and need not consider Plaintiff's "strong work history" under § 404.1529(c)(3) and SSR 16-3p.  In sum, the Court cannot substitute its judgment for the ALJ's, *see Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000), and after reviewing the entire record, *see Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994), the Court finds ample support for the ALJ's credibility finding.

## CONCLUSION

For the reasons stated herein, the Court hereby **AFFIRMS** the Commissioner's final decision.

DATED:  December 16, 2022                          BY THE COURT:

_____

Nina Y. Wang
United States District Judge